IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| WILLIAM P. SLAVIK, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-04331-CV-C-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING ALJ

Plaintiff William Slavik seeks judicial review of the Commissioner's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42. U.S.C. § 401, *et seq.*, and his application for supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Slavik alleges he became disabled as of February 15, 2009, and is therefore unable to engage in substantial gainful employment as a matter of law. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the Commissioner's decision denying disability and SSI benefits is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

---

[1] As Defendant notes, Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

## Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are consistent with the Social Security Act, the relevant case law, and the regulations, and whether they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the record supports a contrary result or because the court may have decided the case differently. *Id.*

## Discussion

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. §§ 423(d) and 1382(a)(3)(A). To determine a claimant's eligibility for benefits, the Commissioner employs a five-step evaluation process.[2] *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

---

[2] If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *Id.* The steps proceed as follows:

At Plaintiff's hearing, the administrative law judge ("ALJ") found that Plaintiff suffers from the following severe impairments: chronic obstructive pulmonary disease ("COPD")/emphysema, single vessel coronary artery disease, status post myocardial infarction, sleep apnea, gastroesophageal reflux disease, and hypertension. R. at 13. The ALJ then determined that these disorders do not meet the requirements of any of the impairments listed in 20 C.F.R., pt. 404, subpt. P, App. 1. Accordingly, the ALJ found Plaintiff not disabled and determined that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he was limited to occupations that do not require exposure to fumes, dust, and gases, etc.. R. at 16.

Plaintiff now argues that the ALJ erred by (1) improperly assessing Plaintiff's credibility; (2) failing to provide the Vocational Expert ("VE") with a proper hypothetical that included all of Plaintiff's impairments; and (3) failing to question the VE about inconsistencies between his testimony and the Dictionary of Occupational Titles ("DOT").

**A. The ALJ properly assessed Plaintiff's credibility.**

Plaintiff argues that the ALJ improperly discounted his credibility, failing to consider the factors set forth in the Social Security regulations and *Polaski v. Heckler*. 739 F.2d 1320 (8th Cir. 1984). Specifically, Plaintiff argues that the activities noted by the ALJ do not support a finding that Plaintiff can perform work on a sustained basis. *See, e.g.*, *Cline v. Sullivan*, 939

---

First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, the applicant is not disabled; if not, the inquiry continues. At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four, the Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King*, 564 F.3d at 979 n.2.

F.2d 560, 566 (8th Cir. 1991) ("[T]he fact that claimant cooks and cleans for herself, shops for groceries, does laundry, visits friends, attends church, and goes fishing does not in and of itself constitute substantial evidence that a claimant possesses the residual functional capacity to engage in substantial gainful activity.").

The ALJ's credibility finding must be affirmed if it is supported by substantial evidence on the record as a whole. When assessing a claimant's credibility, "the ALJ must look to the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions." *Finch v. Astrue,* 547 F.3d 933, 935 (8th Cir. 2008) (citing *Polaski*, 739 F.2d at 1322). Credibility determinations are generally the province of the ALJ, and courts will defer to an ALJ's explicit credibility determination when it is supported by "a good reason." *Finch*, 547 F.3d at 935.

Here, the ALJ provided multiple reasons for discounting Plaintiff's credibility. First, the ALJ relied on inconsistencies between Plaintiff's assertions and the substantial medical evidence of record. R. at 15-20. *See Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002) ("[A]n ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary."). For example, although Plaintiff complained of COPD and breathing problems, medical examination records during the relevant period consistently showed that Plaintiff had no acute distress. R. at 17-18, 213, 215, 218, 277, 327, 349. A chest x-ray and computed tornography revealed chronic lung disease but no pulmonary embolus. R. at 18, 266, 292. Dr. Dennis Suich, M.D., a pulmonologist confirmed that Plaintiff had "very little evidence to suggest significant bronchospastic disease or obstructive airway disease as an etiology of [Plaintiff's] symptoms." R. at 18, 243. Additionally, two of

4

Plaintiff's physicians, Dr. Suich and Dr. Trung Tran, M.D., recommended that Plaintiff modify his lifestyle, start exercising, and reduce his weight because his shortness of breath was due at least in part to deconditioning. R. at 18, 243, 276, 370. Plaintiff's shortness of breath was also treatable with conservative measures as Plaintiff himself acknowledged. R. at 18, 364. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Similarly, although Plaintiff had a history of heart problems and chest pain, the objective medical evidence did not support a finding of disability. Plaintiff had a history of a myocardial infarction that occurred in 2007, prior to the time period relevant to his claim for disability. R. at 17, 212, 217, 233, 264, 292. However, in 2009 a stress test was negative for ischemia with an ejection fraction of 65 percent. R. at 18, 215. Chest x-rays were also negative for acute pathology. R. at 18, 237, 268-69. Additionally, Dr. Tran commented that Plaintiff's chest pain may have been due to acid reflux or GERD, especially in light of a heart catheterization that showed only minimal heart disease. R. at 18, 318, 323.

The ALJ also found that Plaintiff's daily living activities were inconsistent with his subjective complaints of disability. R. at 19. In July 2009, a few months after Plaintiff's alleged onset date, Plaintiff was planning a trip to New Jersey to introduce his new wife to his mother. R. at 19, 264. In 2010, Plaintiff told nurse practitioner, Jean Lucas, NP that he continued to farm, take care of his horses, and do farm chores including carrying hay to feed the horses. R. at 364. Plaintiff further described how he lost weight by increasing the amount he walked when doing farm chores and by ceasing to use a golf cart for transportation around the farm. R. at 364-65, 388-89. At his hearing, Plaintiff testified he could lift up to 50 pounds, feed his horses daily,

drive, and attend church weekly. R. at 19, 33, 160-61, 169-70, 172, 175-76, 178-79, 182. Although Plaintiff now argues that minimal daily living activities are not inconsistent with claims of disabling pain or inability to work, *see e.g.*, *Ford v. Astrue*, 518 F.3d 979, 983 (8th Cir. 2008), here, the ALJ properly found that Plaintiff's extensive activities were inconsistent with his subjective complaints.

Third, the ALJ discussed Plaintiff's failure to follow recommended courses of treatment. R. at 19. While Plaintiff notes that he has suffered from hypertension throughout his adult life, Plaintiff has taken anti-hypertensive medications only intermittently. R. at 242, 245, 370. Additionally, Plaintiff was diagnosed with mild to moderate sleep apnea with sleep fragmentation in February 2010. R. at 18, 308. However, although Plaintiff noted that recommended continuous positive airway pressure ("CPAP") therapy improved his condition, he was non-compliant with the use of the CPAP machine. R. at 18-19, 300, 316, 388, 391. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("failure to follow a recommended course of treatment also weighs against a claimant's credibility").

Finally, the ALJ noted that Plaintiff stopped working for reasons other than disability. R. at 19. Plaintiff stated that during his work as a truck driver, he was laid off. R. at 19, 245, 264, 326. The fact that a claimant left a job for reasons other than his medical condition is a proper consideration in assessing credibility. *See Medhaug v. Astrue*, 578 F.3d 805, 816-17 (8th Cir. 2009) (finding that it was relevant that plaintiff did not leave his position because of a back injury but because he was laid off from the position due to a decline in work).

Accordingly, the Court finds the ALJ articulated sufficient reasons for discounting Plaintiff's credibility. Given the inconsistencies between Plaintiff's accounts of disabling

6

impairments and the record evidence as a whole, the Court upholds the ALJ's credibility assessment.

**B. The ALJ properly questioned the vocational expert, formulating a question which included all Plaintiff's impairments that were supported by substantial evidence of record.**

Plaintiff's second argument is that the ALJ erred at step five in determining that Plaintiff could perform work that exists in significant numbers in the national economy because the ALJ's hypothetical to the VE did not include Plaintiff's proper limitations.

The ALJ posed a hypothetical question to the VE that limited Plaintiff to light work with the non-exertional limitation of a "clean environment;" the ALJ then clarified that the non-exertional limitations were to jobs that did not require concentrated exposure to fumes, odors, dust, or gases. R. at 16, 38-40. When posed with this question, the VE testified that an individual of Plaintiff's age, education, and vocational experience would be able to perform the light, unskilled jobs of a security services worker (5,000 jobs in the regional economy and 330,000 jobs in the national economy), office cleaner (22,000 jobs in the regional economy and 917,000 jobs in the national economy), and parking lot attendant (1,900 jobs in the regional economy and 136,000 jobs in the national economy). R. at 21, 39-40.

Plaintiff argues that the hypothetical question to the vocational expert should have included limitations in addition to those included in his RFC. Specifically, Plaintiff argues that the hypothetical question should have included limitations due to the worsening of his COPD and emphysema with exertion, exposure to temperature extremes, and reaching overhead.

The Court holds that the ALJ's question was proper. The ALJ included limitations in Plaintiff's RFC and in the hypothetical question to the VE that were supported by the evidence of record. Plaintiff's RFC and the resulting hypothetical question do not include greater exertional

limitations or restrictions against reaching overhead or exposure to extreme heat and cold because these limitations are not supported by the evidence of record. With regard to his exertional abilities, Plaintiff testified that he could lift 50 pounds. R. at 33. The ALJ also specifically considered Plaintiff's testimony on other issues, including exacerbated breathing in extreme cold and heat and passing out from shortness of breath after performing overhead work, and properly concluded that these allegations were not entirely credible. R. at 17, 34. To the extent Plaintiff's testimony was not supported by the medical and other evidence of record, the ALJ properly excluded these limitations from Plaintiff's RFC and the hypothetical question.

**C. The ALJ did not err in failing to explicitly ask the VE about the conflict between the VE's testimony and the Dictionary of Occupational Titles.**

Finally, Plaintiff argues that the Court should remand because the ALJ failed to ask the VE whether there was a conflict between his testimony and the DOT as required by SSR 00-4p. The Court holds there is no error here because there was no apparent conflict between the VE's testimony and the DOT.

Under SSR 00-4p, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." If evidence from the VE "appears to conflict with the DOT," the ruling further requires the ALJ to obtain "a reasonable explanation for the apparent conflict."

Here, the ALJ relied upon the VE's testimony in making his determination that Plaintiff was not disabled and could perform work that exists in significant numbers in the national economy without specifically asking whether such testimony conflicted with the DOT. However, such error is harmless because it is clear from the record that no apparent conflict exists. *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("In sum, the ALJ's error in failing

to ask the vocational expert about possible conflicts between his testimony and the *Dictionary of Occupational Titles* was harmless, since no such conflict appears to exist."); *see also Massachi v. Astrue,* 486 F.3d 1149, 1154 n. 9 (9th Cir. 2007) (finding that the ALJ's failure to follow SSR 00–4p would have been harmless if there had been no conflict between the VE's opinion and the DOT).

Moreover, Plaintiff has not asserted any conflicts between the VE's testimony and the DOT aside from the fact that the jobs the VE listed may require overhead reaching and working in extremes of heat and cold. But the ALJ did not include these restrictions in Plaintiff's RFC. Thus, the ALJ had no duty to question the VE as to whether the DOT was consistent with restrictions that were not part of Plaintiff's RFC.

In the absence of any evidence regarding an apparent conflict between the VE's testimony and the DOT with regard to Plaintiff's specified restrictions, the Court holds there was no reversible error here.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: June 24, 2013  /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT